(156 App. Div. 320.)

### BURGESS v. AMERICAN ICE CO.

(Supreme Court, Appellate Division, Second Department. April 18, 1913.)

MASTER AND SERVANT (§ 332*)—INJURY TO THIRD PERSON—NEGLIGENCE—EVIDENCE.

     Evidence of negligence of the driver of an ice company, who in pulling down to the basement of the residence of a customer of the company a dumb-waiter, to put ice on it, injured a servant of the customer, about to put something on it, *held* insufficient to go to the jury.

     [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1274–1277; Dec. Dig. § 332.*]

     Rich and Stapleton, JJ., dissenting.

Appeal from Trial Term, Kings County.

Action by Margaret Burgess against the American Ice Company. From a judgment for plaintiff, and from an order denying a motion for new trial, defendant appeals. Reversed, and new trial granted.

Argued before BURR, THOMAS, CARR, RICH, and STAPLETON, JJ.

Newell Lyon, of New York City, for appellant.
Sterling Pierson, of New York City, for respondent.

BURR, J. Plaintiff was employed as a waitress in the home of Mr. Sanford, who resided at 65 West Fiftieth street, in the borough of Manhattan. This was a private residence. The dining room was on the main floor, and between this floor and the basement there was a dumb-waiter, upon which articles could be transported from one floor to the other. Defendant was in the ice business, and Mr. Sanford was one of its customers. On the 31st day of December, 1910, plaintiff had been serving luncheon in the dining room, and was about to place a plate of cake upon the dumb-waiter for the purpose of sending it to the floor below, and as she placed her hand, with the plate in it, in the dumb-waiter for that purpose, it was suddenly drawn down, and her arm was caught and injured. Thereupon this action was brought, and defendant was charged with negligence, in that no notice or warning was given of an intention to move the dumb-waiter.

It was conceded that it was pulled down by a driver in defendant's employ. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, this appeal comes.

We think that this judgment cannot stand. First, the evidence fails to establish that the act of the driver in placing the ice upon the dumb-waiter, and incidentally of drawing it down for that purpose, was in the discharge of any duty which he owed to his master, the defendant. There is no evidence of any agreement, either express or implied, upon defendant's part, to deliver the ice at any particular part of the premises in question. This was a private as distinguished from an apartment house, where it may be that delivery of articles by tradesmen is not complete until they are taken to the particular floor occupied by the customer. There is no evidence of the location of the ice chest, whether in the basement or upon the upper floor. The only evidence suggesting a reason for the act of the driver is that "the lady of the house, Mrs. Sanford, she was the one who told him to put the ice on the dumb-waiter." We think that in so doing he was performing a friendly service for her, rather than discharging a duty which defendant owed to its customer. For his acts in this regard defendant is not liable. Higgins v. Western Union Telegraph Co., 156 N. Y. 75, 50 N. E. 500, 66 Am. St. Rep. 537; Wyllie v. Palmer, 137 N. Y. 248, 33 N. E. 381, 19 L. R. A. 285; Hasty v. Sears, 157 Mass. 123, 31 N. E. 759, 34 Am. St. Rep. 267.

Second, there is no evidence of negligence on the driver's part. It affirmatively appeared that plaintiff could not be seen by him as she approached the dumb-waiter. There is no evidence, either of a general custom or of his particular custom, provided the dumb-waiter was up, to shake the rope or give any warning before drawing it down. There was evidence that on previous occasions it had been the custom of defendant's driver, when he had *put the ice on the dumb-waiter to send it up,* to shake the rope to let them know. In addition, the only affirmative evidence in this case is to the effect that on this particular occasion the rope was shaken before the dumb-waiter was moved. It is true that plaintiff testified that she did not see this done; but her evidence clearly shows that her attempt to place the plate of cake upon the dumb-waiter was coincident with her approach to the same, and it might well be that the rope had been shaken before she reached it. She testified:

"I really could not tell you that this ice man had put the ice in this tin pan before he started to pull the rope down; or say what he did. I don't know what he did."

After plaintiff had thus testified, she called defendant's driver as a witness in her behalf. She first proved by him, what had been already conceded, that on this occasion he did pull the rope which drew the elevator down. She then proved by him the custom above referred to. He was then asked whether on this particular day he shook the rope, and he replied in the affirmative. It is true that this question was asked of him by defendant's counsel, and it was not strictly in cross-examination of anything brought out on his direct examination. It was received, however, without objection, and if, under the

circumstances, this testimony should not be considered to be part of plaintiff's case, his positive testimony in this respect was not improbable; nor was it contradicted by any other testimony, direct or circumstantial, in rebuttal or otherwise. Plaintiff had called this witness. She was under no obligation to call him, except as she might deem it to be to her advantage in making out her case. By calling him she vouched for him as a witness who intended to tell the truth. At the close of the entire case, therefore, the fact that he did shake the rope before moving the dumb-waiter stood as positively established. The motion at that time made to dismiss the complaint should have been granted.

The judgment and order appealed from must be reversed, and a new trial granted; costs to abide the event.

CARR, J., concurs. THOMAS, J., concurs on the second ground stated in the opinion. RICH and STAPLETON, JJ., dissent.